## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## HATTIESBURG DIVISION

**ALEXANDER JAMES WARREN**                                             **PLAINTIFF**

**v.**                                                             **CIVIL ACTION NO. 2:10cv22-MTP**

**CHRISTOPHER EPPS, RONALD KING, MIKE HATTEN,**        **DEFENDANTS**
**DR. RONALD WOODALL, DR. CHARLOTTE McCLEAVE,**
**WEXFORD HEALTH SOURCES, INC., AND GLORIA PERRY**

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on the Motion for Summary Judgment by defendants Ronald Woodall, Charmaine McCleave,[1] and Wexford Health Sources, Inc. [39], and the Motion for Summary Judgment by defendants Christopher Epps, Gloria Perry, and Mike Hatten [43].[2] Plaintiff filed a consolidated response to these motions [49], and defendants Woodall, McCleave, and Wexford replied [50]. Having reviewed the submissions of the parties, the entire record in this case, and the applicable law, and being fully advised in the premises, the Court finds that the Defendants' respective motions [39] [43] are well taken and should be granted, and that Plaintiff's claims against all Defendants should be dismissed with prejudice.[3]

---

[1] She is sometimes identified in the pleadings as Charlotte McCleave.

[2] Defendant Ronald King was dismissed on December 14, 2010 [33].

[3] The parties having consented to disposition by the Magistrate Judge and the District Judge having entered an Order of Reference [32], the Court is authorized to enter final judgment and make dispositive rulings pursuant to 28 U.S.C. § 636, Fed. R. Civ. P. 73, and L. U. Civ. R. 73.

## FACTUAL BACKGROUND

I.

Plaintiff Alexander James Warren, proceeding *pro se* and *in forma pauperis*, filed his civil rights Complaint [1] pursuant to 42 U.S.C. § 1983 on January 21, 2010. Plaintiff is currently incarcerated at the Mississippi State Penitentiary in Parchman after having been convicted of armed robbery and aggravated assault in Oktibbeha County. At the time his claims arose, he was incarcerated at the South Mississippi Correctional Institution in Leakesville, Mississippi ("SMCI").

Through his complaint, and as clarified during his *Spears* hearing,[4] Plaintiff asserts several claims, his primary one being that he received inadequate medical treatment from defendants Woodall and McCleave, who were his treating physicians at SMCI. He also asserts that Dr. Woodall violated his right to medical privacy. Drs. Woodall and McCleave are employed by defendant Wexford Health Sources, Inc., which provides medical services to the Mississippi Department of Corrections ("MDOC").

Plaintiff also asserts claims against defendants Christopher Epps, who is the Commissioner of MDOC; Gloria Perry, the Chief Medical Officer for MDOC; and Mike Hatten, the Health Services Administrator for MDOC who reports to Dr. Perry. One of Hatten's job duties is to monitor the performance of MDOC's contracted healthcare vendor, Wexford, at SMCI.[5] Plaintiff's cause of action against Epps and Perry revolves around their alleged failure to comply with MDOC's Administrative Remedy Program (ARP) policies and procedures.

---

[4] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985).

[5] Hatten corresponded with Plaintiff's mother concerning his treatment as discussed *infra*.

2

Plaintiff also charges that Perry failed to follow-up on whether her favorable response to the ARP process was put into action. As for Hatten, Plaintiff reasons that since the medical staff was deliberately indifferent to his medical needs, and Hatten was responsible for monitoring the medical performance of those physicians, then he failed in his duty to see that Plaintiff received proper treatment and made misrepresentations in communication with Plaintiff's mother concerning his efforts.[6]

II.

Plaintiff entered the Mississippi prison system in May 2009, and arrived at SMCI on approximately June 8, 2009. Specifically, Plaintiff claims that he suffers from an arthritic condition known as ankylosing spondylitis[7] and that, prior to his incarceration, he was prescribed Enbrel to treat its effects by a physician in Indiana. He charges that this treatment has been interfered with since his incarceration.[8]

The medical material attached to Defendants' respective motions for summary judgment is voluminous. It reflects that Plaintiff has been seen on numerous occasions for various

---

[6]Epps, Perry, and Hatten have submitted affidavits accompanying their motion for summary judgment, as have Woodall and McCleave with theirs.

[7]According to the website of the Spondylitis Association of America (www.spondylitis.org) "[a]nkylosing spondylitis . . ., or AS, is a form of arthritis that primarily affects the spine, although other joints can become involved. It causes inflammation of the spinal joints (vertebrae) that can lead to new bone formation on the spine, causing the spine to fuse in a fixed, immobile position, sometimes creating a forward-stooped posture." In addition, "[c]urrently, there is no known cure for AS, . . ." *Id*. Plaintiff acknowledges that his condition is not curable.

[8]During the ARP process, Plaintiff went so far as to claim that "the State of Mississippi is legally obligated to treat this disease with Enbrel, a non-narcotic, when it is clear that [he] was prescribed Enbrel before incarceration."

complaints, mainly neck, back, shoulder, hip, and knee pain. It is clear that Plaintiff demands the uninterrupted weekly administration of Enbrel throughout his incarceration to deal with his condition. Alternatively, he has been seeking (and denied) a medical release from custody.[9]

Prior to his incarceration, Plaintiff was treated by Dr. Kevin Joyce in Indiana. Dr. Joyce's records indicate that Plaintiff was not on a constant regimen of Enbrel.[10] At times, Plaintiff would be taken off Enbrel, and then restarted for a period of time. In fact, it is not entirely clear whether Dr. Joyce prescribed Enbrel during the period preceding Plaintiff's incarceration, since it appears that on occasion he provided Plaintiff with samples due to insurance and Medicaid issues.[11]

---

[9]The Court's recitation of Plaintiff's medical treatment is based primarily on its independent review of the medical records supplied with the summary judgment motions; however, it appears that the chronology in the affidavits of Drs. Woodall and McCleave coincide with those records.

[10]While Plaintiff's condition was thought to be consistent with ankylosing spondylitis during the early stages of Dr. Joyce's treatment, enteropathic sacroiliitis was considered an alternative possibility.

[11]Dr. Joyce submitted a letter dated September 22, 2010 "To Whom It May Concern," in which he stated that he "most recently had [Plaintiff] on Enbrel. Enbrel is an anti-TNF [which according to Dr. Woodall's affidavit stands for tumor necrosis factor, "a protein that attaches to the surfaces of a joint, thereby producing joint inflammation and damage"] or biological medicine. These drugs are considered the creme de la creme for treatment of ankylosing spondylitis . . . I would greatly encourage that he be restarted on Enbrel if at all possible." This letter does not refer to a prescription and only encourages the use of Enbrel. Plaintiff's response to the motions for summary judgment includes the following: "By receiving free samples of an expensive drug indicates the necessity of the treatment for the plaintiff. Although there is a dispute between the use of Enbrel throughout Dr. Joyce's records, the diagnosis was never sporadic and indicated ankylosing spondylitis as the plaintiff's medical condition." As discussed *infra*, the issue before the Court is not whether Plaintiff is receiving the best treatment available, was mis-diagnosed, or is even the victim of medical malpractice, but whether he is receiving constitutionally sufficient treatment while incarcerated. *See Stewart v. Murphy*, 174 F.3d 530, 535 (5th Cir. 1999) (holding that prison doctor's failure to follow the advice of a non-prison doctor did not amount to deliberate indifference, but was merely a difference of opinion as to the

Over the course of their treatment, Drs. Woodall and McCleave prescribed different medications to address Plaintiff's complaints. Those medicines included Naproxen (which was also used during Dr. Joyce's treatment), Prednisone, Mobic, Piroxicam, Solu-Medrol injections, Zantac, Ibuprofen, Aleve, Flexeril, and Tegretol.[12] Although the records show that Dr. McCleave told Plaintiff on one occasion in August 2009 that "Enbrel [was] not on [the] formulary and [would] not be prescribed," she eventually requested in October 2009 that Enbrel be used as an alternative drug treatment for a 6-month period. Dr. Woodall denied this request, but decided to continue the use of NSAIDs.[13]

In June 2010, Plaintiff was approved to receive Enbrel for a 1-month initial period.[14]

---

proper course of treatment).

[12]At one point Dr. McCleave stated: "I don't really know what to offer him. He has been on several different meds. Will give a trial of Tegretol." Plaintiff's prison medical records reflect various diagnoses: sacroiliitis, ankylosing spondylitis, and rheumatoid arthritis. Plaintiff is especially vocal about Tegretol because it is primarily used as a seizure medication (he does not suffer from seizures); however, he does not dispute Dr. McCleave's statement that it is also used to treat chronic pain.

[13]Nonsteroidal Anti-Inflammatory Drugs. Again according to the website of the Spondylitis Association of America, *see supra* note 6, "NSAIDs are the most commonly used class of medication used in treating the pain and stiffness associated with spondyloarthritis." These medications include Ibuprofen, Naproxen (including Aleve), and Mobic (Meloxicam).

[14]This coincides with Dr. Perry's Third Step Response to Plaintiff's ARP advising Wexford to provide Enbrel to Plaintiff. It appears that the medical approval came from Tom Lehman, M.D., Wexford's Regional Medical Director, who wrote Dr. Woodall that Plaintiff needed to be assessed for side effects, including anemia. Anemia had been one of Dr. Woodall's concerns with respect to Enbrel. The records show that Plaintiff was also provided treatment in some form by Drs. Daisy Thomas and Mheja Williams. Lehman, Thomas, and Williams are not parties in this cause of action. There is also reference in the records to John Dial, M.D., and various nurses who are also not named in this lawsuit.

Plaintiff continued to receive Enbrel injections until approximately September 2010.[15]

In November 2010, an appointment was arranged for Plaintiff to see a specialist in the field of rheumatology (Dr. Eman R. Boulis) for a consultation. Interestingly, and significantly, in spite of the fact that Dr. Boulis wrote in December 2010 that Plaintiff's symptoms improved while on Enbrel and Naproxen, he did not immediately resume treatment with Enbrel but wanted to wait and review results of screening tests. In January 2011 Enbrel was resumed, and it was recommended that this medication be continued once a week for 6 months. Plaintiff will continue to be followed.[16]

### III.

Plaintiff alleges that in September/October 2009, Dr. Woodall made statements regarding his medical condition in front of other inmates. According to his testimony at the *Spears* hearing, Plaintiff does not claim a physical injury from this, but only that he is in fear of harm because others may know of his condition.

Dr. Woodall's affidavit addresses medical privacy. He states: "While I cannot recall the specific details of every interaction I have had with [Plaintiff], I do recall that on one occasion my interaction with him took place at the nurse's station, because I needed access to a computer in that location. I have no control over the physical structure and layout of the clinic, which due to security concerns does not afford inmates the same degree of privacy available to patients in a

---

[15]Plaintiff's blood work was monitored during this period of time. Anemia in fact occurred. This resulted in Plaintiff being given ferrous sulfate and multiple vitamins.

[16]In his [48] Motion for Extension of Time to respond to the respective motions for summary judgment, Plaintiff declares that he "is being moved from Mississippi State Penitentiary to Central Mississippi Correctional Facility once a month to have consultations with the plaintiff's rheumatologist Dr. Eman Boulis."

non-correctional setting."

## **STANDARD FOR SUMMARY JUDGMENT**

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[17] Summary judgment is proper "where a party fails to establish the existence of an element essential to his case and on which he bears the burden of proof." *Washington v. Armstrong World Indus.*, 839 F.2d 1121, 1122 (5th Cir. 1988). "A complete failure of proof on an essential element renders all other facts immaterial because there is no longer a genuine issue of material fact." *Id*.

This Court may grant summary judgment only if, viewing the facts in a light most favorable to the plaintiff, the defendants demonstrate that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law. *Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir. 1995). If the defendants fail to discharge the burden of showing the absence of a genuine issue concerning any material fact, summary judgment must be denied. *John v. State of Louisiana*, 757 F.2d 698, 708 (5th Cir. 1985). The existence of an issue of material fact is a question of law that this Court must decide, and in making that decision, it must "draw inferences most favorable to the party opposing the motion, and take care that no party will be improperly deprived of a trial of disputed factual issues." *Id*. (quoting *U. S. Steel Corp. v. Darby*,

---

[17]The amendments to Fed. R. Civ. P. 56 became effective December 1, 2010. According to an Excerpt from the Report of the Judicial Conference, Committee on Rules of Practice and Procedure, the amendments to Rule 56 "are intended to improve the procedures for presenting and deciding summary-judgment motions, to make the procedures more consistent across the districts, and to close the gap that has developed between the rule text and actual practice. *The . . . amendments are not intended to change the summary-judgment standard or burdens.*" (Emphasis supplied).

516 F.2d 961, 963 (5th Cir. 1975)).

There must, however, be adequate proof in the record showing a real controversy regarding material facts. "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). Thus, "[c]onclusory allegations," *Lujan v. National Wildlife Federation*, 497 U.S. 871, 902 (1990), unsubstantiated assertions, *Hopper v. Frank*, 16 F.3d 92, 96-97 (5th Cir. 1994), or the presence of a "scintilla of evidence," *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994), are not enough to create a real controversy regarding material facts. In the absence of proof, the Court does not "assume that the nonmoving party could or would prove the necessary facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

## **ANALYSIS**

Plaintiff's claims are before the Court pursuant to 42 U.S.C. § 1983. However, Section 1983 "neither provides a general remedy for the alleged torts of state officials nor opens the federal courthouse doors to relieve the complaints of all who suffer injury at the hands of the state or its officers." *White v. Thomas*, 660 F.2d 680, 683 (5th Cir. 1981). Rather, "[i]t affords a remedy only to those who suffer, as a result of state action, deprivation of 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Id.* (quoting 42 U.S.C. § 1983).

It is well-settled that Section 1983 "does not create supervisory or *respondeat superior* liability." *Oliver v. Scott*, 276 F.3d 736, 742 & n.6 (5th Cir. 2002); *see also Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987) (citations omitted) ("Under section 1983, supervisory officials

are not liable for the actions of subordinates on any theory of vicarious liability."). "To state a cause of action under § 1983, the plaintiff must allege facts reflecting the defendants' participation in the alleged wrong, specifying the personal involvement of each defendant." *Jolly v. Klein*, 923 F. Supp. 931, 943 (S.D. Tex. 1996) (citing *Murphy v. Kellar*, 950 F.2d 290, 292 (5th Cir. 1992)). Thus, supervisory prison officials may be held liable for a Section 1983 violation only if they either were personally involved in the constitutional deprivation or if there is a "sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Thompkins*, 828 F.2d at 304. *See also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948 (2009) ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

Moreover, "[f]or purposes of liability, a suit against a public official in his official capacity is in effect a suit against the local government entity he represents." *Mairena v. Foti*, 816 F.2d 1061, 1064 (5th Cir. 1987) (citations omitted).[18] The Supreme Court has held that in order for a local governmental entity to have liability under Section 1983, a plaintiff must prove that a policy, custom, or practice of that local government entity was the "moving force" behind the constitutional violation. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978).

<u>Deliberate Indifference to Serious Medical Needs</u>

"Prison officials violate the constitutional proscription against cruel and unusual punishment when they are deliberately indifferent to a prisoner's serious medical needs, as doing

---

[18]Defendant Epps, who is the Commissioner of the Mississippi Department of Corrections, remains a defendant in his official capacity only. *See* Omnibus Order [33].

9

so constitutes unnecessary and wanton infliction of pain." *Davidson v. Texas Dep't of Criminal Justice*, 91 Fed. Appx. 963, 964 (5th Cir. 2004), *cert. denied*, 543 U.S. 864 (2004) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

The Fifth Circuit has noted that deliberate indifference "is an extremely high standard to meet." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (quoting *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001)). The test for establishing deliberate indifference is "one of subjective recklessness as used in the criminal law." *Farmer v. Brennan*, 511 U.S. 825, 839 (1994). A prison official may not be held liable under this standard pursuant to Section 1983 unless the Plaintiff alleges facts which, if true, would establish that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. *See also Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999) (an official acts with deliberate indifference only when he or she knows of and disregards an excessive risk to a prisoner's health or safety).

To successfully make out a showing of deliberate indifference, Plaintiff must "submit evidence that prison officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any other similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Davidson*, 91 Fed. Appx. at 965 (quoting *Domino*, 239 F.3d at 756). "Unsuccessful medical treatment, ordinary acts of negligence, or medical

malpractice do not constitute a cause of action under § 1983." *Id*. (citing *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir. 1999)).  The Plaintiff is not entitled to the "best" medical treatment available.  *McMahon v. Beard*, 583 F.2d 172, 174 (5th Cir. 1978); *Irby v. Cole*, 2006 WL 2827551, at *7 (S.D. Miss. 2006) (adopting Report and Recommendation).  Additionally, a prisoner's mere "[d]isagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs." *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 2001).  Furthermore, "[d]elay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference [that] *results in substantial harm*." *Easter v. Powell*, 467 F.3d 459, 464 (5th Cir. 2006) (emphasis added to original quotation) (citation and internal quotation omitted).

Based on the foregoing, Plaintiff has failed to establish that Dr. Woodall or, for that matter Dr. McCleave, was deliberately indifferent to his serious medical needs.  Plaintiff clearly disagrees with their treatment of him.  However, as noted *supra*, mere disagreement with a course of medical treatment does not constitute deliberate indifference.  *See Norton*, 122 F.3d at 292.  Likewise, Plaintiff's disagreement with the medication prescribed by Drs. Woodall and McCleave, or their method of examination, treatment, and/or diagnosis for his ailment, simply does not rise to the level of a constitutional violation.  *Id*.  *See also Davidson*, 91 Fed. Appx. at 964-65 (5th Cir. 2004) (affirming dismissal of plaintiff's complaint that the denial of interferon therapy for plaintiff' hepatitis C did not amount to deliberate indifference to a serious medical need).  Even assuming Dr. Woodall should have prescribed a different medication, such conduct

at most constitutes negligence, which does not amount to deliberate indifference.[19] Plaintiff is reminded that prisoners are not entitled to the "best" medical treatment available. *See McMahon*, 583 F.2d at 174. Further, Plaintiff's claim that Drs. Woodall and McCleave improperly diagnosed him also fails to rise to the level of a constitutional violation. *See Domino*, 239 F.3d at 756 (stating that "incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference").

Plaintiff received extensive medical treatment as discussed *supra*, which belies his claim that these physicians did not treat him or "care" about his condition. *See Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995) ("Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegation of deliberate indifference.") (citing *Mendoza v. Lynaugh*, 989 F.2d 191, 193-95 (5th Cir. 1993).

To the extent that Plaintiff claims that Drs. Woodall's and McCleave's treatment was negligent or somehow incorrect, this does not provide a basis for a section 1983. They were not deliberately indifferent. Accordingly, Plaintiff's claims against Drs. Woodall and McCleave should be dismissed with prejudice.

As for Defendant Wexford Health Sources, there is no *respondeat superior* liability under Section 1983, and Plaintiff has failed to demonstrate that Wexford affirmatively participated in any constitutional deprivation or implemented an unconstitutional policy. *See Powell v. Shopco Laurel Co.*, 678 F.2d 504, 506 (4th Cir. 1982) (holding that plaintiff could not recover against private state-employed company under Section 1983 based on theory of *respondeat superior*).

---

[19]As mentioned *supra*, the independent specialist currently treating Plaintiff, Dr. Boulis, discontinued Enbrel for a period of time and has limited its present duration.

*Cf. Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir. 1992) (discussing liability of municipality for actions of subordinate). Of course, a more fundamental reason supports the conclusion that liability should not be imposed on Wexford: its employees did not commit a constitutional violation. Accordingly, Wexford is entitled to judgment as a matter of law on Plaintiff's claims for deliberate indifference to his medical needs.

Finally with respect to medical treatment, based on the record, the Court concludes that Hatten was not personally involved with Plaintiff's medical care. He is not a medical professional. Accordingly, even if he did communicate with Plaintiff's mother regarding medical treatment, Hatten is not in a position to personally evaluate and make decisions regarding Plaintiff's medical care. Because Hatten was not personally involved in Plaintiff's medical treatment, and because there is no *respondeat superior* liability under Section 1983, Plaintiff has failed to establish that Hatten violated his constitutional rights. *See Cronn v. Buffington*, 150 F.3d 538, 544 (5th Cir. 1998); *Cuoco v. Moritsugu*, 222 F.3d 99, 111 (2nd Cir. 2000) (holding that the failure of the non-doctor defendants–Warden and Health Services Administrator–to intervene in the medical treatment of an inmate was not objectively unreasonable, even if it were wrongful); *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995) (holding that because the warden and medical treatment director "lacked medical expertise, they cannot be liable for the medical staff's diagnostic decision not to refer [plaintiff] to a doctor to treat his shoulder injury"). *See also Stewart v. Murphy*, 174 F.3d 530, 536 (5th Cir. 1999) (holding that medical director at Parchman was not deliberately indifferent to plaintiff's serious medical needs, where director was not one of plaintiff's treating physicians and had limited contact with plaintiff); *Hailey v. Savers*, 240 Fed. Appx. 670, 672 (5th Cir. 2007) (affirming dismissal of prison medical

13

administrator because plaintiff "failed to allege specific facts to demonstrate that [administrator] had personal involvement in placing [plaintiff] in a job assignment that posed a substantial risk of harm or that [administrator] implemented policies to physically harm [plaintiff]").[20]

Privacy

Plaintiff claims that he has a federal claim under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), Pub. L. No. 104-191, §§ 261-254, 110 Stat. 1936 (1996), the statute which generally provides for confidentiality of medical records. However, "HIPAA provides no express or implied private cause of action for its violation, and the Fifth Circuit and other courts have consistently rejected any argument to the contrary, as have the legal commentators who have examined the statute." *Wells v. Pinion*, 2008 WL 2185329, at *7 (E.D. La. 2008) (adopting Report and Recommendation; collecting cases and articles).

In addition, "[a] prisoner has no clearly recognized constitutional right in the privacy of his medical records, particularly not in the Fifth Circuit." *Id.* at *6 (rejecting inmate's claim for violation of privacy rights based on loss of his medical records by prison staff). *See also Barnes v. Brownlow*, 2008 WL 2704868, at *4 (E.D. Tex. 2008) (adopting Report and Recommendation; dismissing right to privacy claim where prisoner complained that nurse made him announce his medical problem in front of other prisoners); *McClain v. Wilkinson*, 2008 WL 1860203, at *9 (W.D. La. 2008) (Report and Recommendation; holding that prisoner failed to state constitutional claim for violation of his right to privacy based on allegation that jail nurse read

---

[20]Although Perry is a medical doctor, the same result holds true for her as to monitoring Plaintiff's treatment. From a *respondeat superior* standpoint, she was not involved in his medical care, other than render a favorable decision to allow him to receive Enbrel and authorize his current treatment by Dr. Boulis.

his medical records aloud to other inmates and staff).

Even where courts have recognized such a right to privacy, it has been only in the very limited context of either HIV-positive or transsexual status. *Wells*, 2008 WL 2185329, at *7 (citing *Doe v. Southeastern Pa. Transp. Auth. (SEPTA)*, 72 F.3d 1133, 1140 (3d Cir. 1995); *Powell v. Schriver*, 175 F.3d 107, 111-12 (2d Cir. 1999)). Other courts have held that prisoners do not have a privacy interest in other types of medical conditions "which, even though potentially embarrassing, are not of the 'excruciatingly private and intimate nature' of HIV and transsexualism." *Id.* (citing *Rodriguez v. Ames*, 287 F.Supp. 2d 213, 220 (W.D.N.Y. 2003) (no privacy interest in diagnosis of proctitis, an inflammation of the rectal tissue and hemorrhoids); *Webb v. Goldstein*, 117 F.Supp. 2d 289, 298 (S.D.N.Y. 2000) (no privacy right regarding various genital conditions)). In the instant case, Plaintiff has not alleged that he has "any serious or extremely sensitive medical condition, such as HIV, that might entitle him to the very limited constitutional protection recognized in two circuits, but not the Fifth Circuit." *Walker v. Gerald*, 2006 WL 1997635, at *5 (E.D. La. 2006) (adopting Report and Recommendation). Accordingly, this Court finds that Plaintiff has failed to state a constitutional claim for violation of his right to privacy.

Even assuming *arguendo* that Plaintiff has stated a claim for violation of his privacy rights, his claims for damages are barred by the physical injury requirement of the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997, *et seq*. Section 1997e(e) of the PLRA provides that "no federal civil action may be brought by a prisoner confined in a jail, prison or other correctional facility, for mental or emotional injuries suffered while in custody without a prior showing of physical injury." Plaintiff does not allege to have suffered a physical injury.

15

Thus, for this reason as well, Plaintiff's claim for damages should be dismissed. *See Geiger v. Jowers*, 404 F.3d 371, 375 (5th Cir. 2005) ("Section 1997e(e) applies to all federal civil actions in which a prisoner alleges a constitutional violation, making compensatory damages for mental and emotional injuries non-recoverable, absent physical injury."); *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999) (PLRA requires physical injury before a prisoner can recover for psychological damages). *See also Allen v. Morgan*, 66 Fed. Appx. 526 (5th Cir. 2003) (*per curiam*) (affirming dismissal of inmate's privacy claim where inmate did not show that he suffered a specific physical injury as a result of the alleged privacy violation).

Violation of MDOC Policy and Procedures

Finally, Plaintiff claims that the ARP process took longer than it should have pursuant to MDOC regulations.[21] However, even if true, such failure does not arise to a constitutional violation. *See Hernandez v. Estelle*, 788 F.2d 1154, 1158 (5th Cir. 1986) (holding that the mere failure of a prison official to follow the prison's own regulation or policy does not amount to a constitutional violation); *McGowan v. Peel*, 2007 WL 710154, at *2 (S.D. Miss.2007) (same).[22]

Moreover, Plaintiff does not have a constitutional right to a grievance procedure, and has

---

[21] It appears that Plaintiff filed the third and final step of the ARP process on October 30, 2009, and that defendant Perry responded on June 11, 2010. The top of the form on which Perry responded indicates that a response to the inmate is to be given within 40 days of the receipt of the appeal of the step 2 process. *See* [44] Defendants' Memorandum in Support of Motion for Summary Judgment, at p. 14. *But see* docket entry [43]-7 attached to Defendants' Motion for Summary Judgment (indicating third step appeal occurred December 18, 2009).

[22] Plaintiff's response to the motions for summary judgment contains the following inexplicable statements with respect to Dr. Perry's eventual ARP response: "Although this isn't a constitutional violation it is under federal law."; and "Although this isn't a constitutional violation in and of itself, it did violate federal law which led to a constitutional violation of deliberate indifference."

no due process right to having his grievance resolved to his satisfaction. *See Geiger v. Jowers*, 404 F.3d 371, 373-74 (5th Cir. 2005); *Jones v. Shabazz*, 2007 WL 2873042, at *21 (S.D. Tex. 2007). Indeed, in light of his demands for Enbrel, the ARP process resulted in the medication being provided, subject to further ongoing treatment and medical decisions discussed *supra*.[23] Accordingly, defendants Epps[24] and Perry are entitled to judgment as a matter of law on

---

[23]Plaintiff's response even refers to denial of access to the courts in connection with the ARP. This is well beyond the assertions in his complaint or the *Spears* hearing, but out of an abundance of caution the Court will address it as worthy of a footnote. "Prisoners retain a right of adequate, effective, and meaningful access to the courts." *Roberson v. Hewes*, 701 F.2d 418, 420 (5th Cir. 1983). However, in order to state a constitutional violation, Plaintiff must show a "relevant actual injury" caused by the alleged denial of access to the courts. *See Lewis v. Casey*, 518 U.S. 343, 349-52 (1996) (citation omitted) (summarizing argument that in order to prevail on an access-to-the-courts claim, plaintiff must show an "'actual injury'–that is, 'actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim'"). *See also Donnelly v. Edwards*, 95 Fed. Appx. 702, 703 (5th Cir. 2004) (upholding dismissal of access-to-the-courts claim because plaintiff did not establish that he was unable to proceed in a court case as a result of alleged delays and denials of legal assistance); *Cartner v. Lowndes County*, 89 Fed. Appx. 439, 442 (5th Cir. 2004) (affirming dismissal of access-to-the-courts claim where plaintiff failed to explain "how his position as a litigant was adversely affected"). In the instant case, Plaintiff has failed to allege, much less demonstrate, that he was actually injured or prejudiced by the alleged delay in the ARP process. Indeed, Plaintiff's claims were addressed through the ARP, and such claims are currently before this Court. Accordingly, Plaintiff was not injured or prejudiced by the alleged actions of Dr. Perry. *See Dickerson v. Jordan*, 34 Fed. Appx. 962, 2002 WL 663719, at *1 (5th Cir. 2002) (affirming dismissal of claim for denial of access to courts because plaintiff failed to allege an actual injury); *Morgan v. Godwin*, 193 F.3d 518, 1999 WL 706222, at *1 (5th Cir. 1999) (affirming dismissal of claim for denial of access to courts because plaintiff failed to prove that his legal position was prejudiced by the alleged violation; plaintiff failed to allege which claims he was prevented from presenting to the courts).

[24]Epps remains in this cause of action only in his official capacity. Once again out of caution, and in light of Plaintiff's "kitchen sink" approach, the Court addresses him individually. To the extent Plaintiff alleges claims against Commissioner Epps in his official capacity, which would in effect be a claim against MDOC or SMCI, Plaintiff's claims fail as a matter of law. As stated above, there is no *respondeat superior* liability under Section 1983. *See Oliver, supra*, 273 F.3d at 742 & n.6. Further, Plaintiff has failed to demonstrate that MDOC or SMCI implemented a policy, custom, or practice that was the "moving force" behind the alleged constitutional violation. *See Monell*, 436 U.S. at 694. Commissioner Epps is also entitled to

Plaintiff's due process claim.

## CONCLUSION

There is no doubt that there is disagreement over the proper course of Plaintiff's medical treatment. It is equally clear that he has been treated over the course of his confinement, even if not to his liking or consistent with his demands. It is not for the Court to substitute its judgment as to the course of proper treatment.

Plaintiff's claims do not rise to the level of constitutional violations, and he has failed to show a real controversy supported by material facts.[25] For the reasons stated above, Defendants' Motions for Summary Judgment [39] [43] are **GRANTED**, and this matter is dismissed with prejudice. A separate judgment shall be entered in accordance with Fed. R. Civ. P. 58.

THIS the 2nd day of August, 2011.

                                                                          s/ Michael T. Parker
                                                                          United States Magistrate Judge

---

judgment as a matter of law as to Plaintiff's medical claims in his official capacity.

[25] All defendants also argue that they are entitled to summary judgment on the ground of qualified immunity. Because of this Court's findings and conclusions, it is not necessary to address that issue. *See Wells v. Bonner*, 45 F.3d 90, 94 (5th Cir. 1995) ("if it becomes evident that the plaintiff has failed to state or otherwise to establish a claim, then the defendant is entitled to dismissal on that basis") (citing *Siegert v. Gilley*, 500 U.S. 226, 231-33 (1991)). *See also Sappington v. Bartee*, 195 F.3d 234, 236 (5th Cir. 1999). Thus, if the Court finds that Plaintiff's claims are not cognizable as constitutional claims, it need not reach the question whether Defendants are entitled to qualified immunity. Accordingly, because Plaintiff's allegations fail to establish constitutional claims, the Court does not reach the issue of qualified immunity. Nor does the Court need to deal with whether some issues raised by Plaintiff are moot.